IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 1:09CR463-02 |
| | ) | Hon. Anthony J. Trenga |
| ALCIDES UMANA, | ) | Sentencing June 4, 2010 |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S POSITION ON SENTENCING FACTORS**

Pursuant to Title 18 U.S.C. § 3553(a), Federal Rule of Criminal Procedure 32, and Section 6A1.3 of the *United States Sentencing Guidelines*, the Defendant, Alcides Umana, by and through his attorneys, states that he has received and reviewed the Presentence Report ("PSR") prepared in this case as well as the Addendum.  Mr. Umana has the following objections to the PSR guidelines calculation, but has no factual corrections to make.  Supplemental information in support of defendant's position on sentencing will be provided in a separate Sentencing Memorandum filed under seal.  For the reasons stated below, Mr. Umana respectfully requests that this court impose a sentence of no more than 120 months.

**BACKGROUND**

On March 31, 2010, Mr. Umana pleaded guilty pursuant to a plea agreement to Count 3 of his indictment, admitting his guilt to Aiding and Abetting the Use of a Firearm in a Crime of Violence Causing Death, in violation of 18 U.S.C. §924(j).  This Court continued sentencing to June 4, 2010, for the preparation of a PSR.  Mr. Umana has been held in custody on this charge since September 30, 2009.

**ARGUMENT**

    I.       **THE APPLICABLE LAW**

The Supreme Court's opinions in *Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558 (Dec. 10, 2007), and *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586 (Dec. 10, 2007), have effected an important change with respect to the law of federal sentencing, and shifted far more discretionary authority into the hands of trial courts and away from the courts of appeal. In particular, the Court abrogated the view that the degree of appellate scrutiny of sentencing decisions turns on how far the sentence differs from the advisory Guideline range. *Gall*, 128 S. Ct. at 595-97. In other words, the Supreme Court rejected "an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range." *Id.* at 595. On the contrary, "regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard" while giving "due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.* at 597.

While sentencing courts must continue to *consider* the sentencing Guidelines, Congress has *required* federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in paragraph 2 of § 3553(a) of Title 18. Those factors include (a) the nature and circumstances of the offense and the history and characteristics of the defendant; (b) the kinds of sentences available; (c) the Guideline range; (d) the need to avoid unwarranted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3553(a).

The overriding principle and basic mandate of § 3553(a) requires district courts to impose

a sentence "*sufficient, but not greater than necessary,*" to comply with the four purposes of sentencing set forth in Section 3553(a)(2): retribution (to reflect the seriousness of the offense, to promote respect for the law, and to provide "just punishment"), deterrence, incapacitation ("to protect the public from further crimes"), and rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner").  The sufficient-but-not-greater-than-necessary requirement is often referred to as the "parsimony provision."  This requirement is not just another factor to be considered along with the others set forth in Section 3553(a); rather, it sets an independent limit on the sentence.

Accordingly, and as the Supreme Court further explained in *Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456 (2007), a district court remains free to reject the advisory sentencing range "perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply," or, the Court continued, "perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless." *Id*. at 2465; *see also Kimbrough*,128 S. Ct. at 574-75 (noting that "a district court's decision to vary from the advisory Guidelines may attract greatest respect when the sentencing judge finds a particular case 'outside the 'heartland' to which the [Sentencing] Commission intends individual Guidelines to apply'") (quoting *Rita*, 127 S. Ct. at 2465).  As such, according to the Supreme Court, a party may "contest[ ] the Guidelines sentence generally under § 3553(a) - that is, [he may] argu[e] that the Guidelines reflect an unsound judgment." *Rita*, 127 S. Ct. at 2468.

Indeed, as the Supreme Court has stated recently in a case arising from the Fourth Circuit, no presumption concerning the applicability of the guidelines may be applied during the

sentencing itself:

> Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable. In *Rita* we said as much, in fairly explicit terms: "We repeat that the presumption before us is an appellate court presumption. . . . [T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." 551 U.S., at 351, 127 S. Ct. 2456, 168 L. Ed. 2d 203. And in *Gall v. United States*, 552 U.S. ___, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007), we reiterated that district judges, in considering how the various statutory sentencing factors apply to an individual defendant, "may not presume that the Guidelines range is reasonable." Id., at ___, 128 S. Ct. 586, 169 L. Ed. 2d 445 (slip op., at 11-12).

*Nelson v. United States*, 555 U.S. ___ (2009), 2009 U.S. LEXIS 872 (U.S. Jan. 26, 2009) (per curium).

## II. OBJECTIONS TO THE PRESENTENCE REPORT

Mr. Umana respectfully objects to the sentencing guidelines calculations contained in the amended presentence report. First, Mr. Umana asserts that the proper guidelines range for the Court to consider is a cross-reference to second degree murder, not first degree murder, given the facts of the case. Second, Mr. Umana asserts that he should be eligible for consideration of a lesser role in the offense.

First, Mr. Umana requests that this Court begin its analysis of the appropriate guidelines by considering the language of Application Note 2(B) to §2A1.1 in determining the appropriate sentence.[1] The Probation Office points out in the presentence report at ¶ 71, that a downward

---

[1] **2. Imposition of Life Sentence.—**

\*\*\*

(B) Felony Murder.—If the defendant did not cause the death intentionally or knowingly, a downward departure may be warranted. For example, a downward departure may be warranted if in robbing a bank, the defendant merely passed a note to the teller, as a result of which the teller had a heart attack and died. The extent of the departure should be based upon the defendant's state of mind (e.g., recklessness or negligence), the degree of risk inherent in the conduct, and the nature of the underlying offense conduct. However, departure below the minimum guideline sentence provided for second degree murder in §2A1.2 (Second Degree Murder) is not likely to be appropriate. Also, because death obviously is an aggravating factor, it necessarily would be inappropriate to impose a sentence at a level below that which the

departure to the guidelines may be appropriate where, as in this case, the death was not committed intentionally by Mr. Umana.  Under the guidelines, and before any other analysis under 18 U.S.C. §3553(a), the Probation Office concedes that this Court may consider a sentence no lower than the recommendation given in a cross-reference to second degree murder.  In Mr. Umana's case, the base offense level should drop from 43 for first degree murder to 38 for second degree murder, because this more accurately captures the facts surrounding Mr. Luna's death. *See* PSR at ¶ 25-27.  The death that resulted in this case was not the result of a premeditated plan to effect a killing.  This case stemmed from a robbery attempt that spun out of control after a struggle erupted between the victim and one of Mr. Umana's co-defendants.  Indeed, Mr. Umana entered the vehicle that afternoon aware only that he was helping his co-defendants to collect "rent."  He did not enter with a gun, and he did not enter with any intent or knowledge that anyone would die.  These facts certainly warrant a second-degree cross-reference for Mr. Umana. Crediting Mr. Umana for his acceptance of responsibility, his offense level should therefore start at level 35, for which he faces an initial sentencing recommendation range of 168 to 210 months.

Second, Mr. Umana should be eligible for a further reduction of two points in his guidelines calculation for his comparatively lesser role in the offense pursuant to U.S.S.G. §3B1.2.[2]  Mr. Umana should be considered as a minor participant in the death that resulted in this

---

guideline for the underlying offense requires in the absence of death.

[2] **U.S.S.G. § 3B1.2. Mitigating Role**
Based on the defendant's role in the offense, decrease the offense level as follows:
(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
In cases falling between (a) and (b), decrease by 3 levels

case. Undisputed in the facts of this case are that Mr. Umana did not bring a gun to the incident in question, nor did he fire either of the guns that caused the wounds resulting in the victim's death. Furthermore, it is beyond question that Mr. Umana was not a participant at the same level as his co-defendants in either the planning or the carrying out of the robbery. His actions were not intended to harm the victim, nor did they result in his death. Mr. Umana does not contend that his role was minimal, or that he should not be held responsible for his participation - simply that his culpability for the death of Mr. Luna was substantially less than that of his co-defendants. Therefore, if the Court determines that a minor role adjustment is in order, Mr. Umana's adjusted offense level is fixed at 33 after acceptance of responsibility, resulting in a recommended sentencing range of 135-168 months.

### III.     THE APPROPRIATE SENTENCE PURSUANT TO 18 U.S.C. § 3553(a)

Mr. Umana submits that a sentence of 120 months satisfies the purposes of the statute and meet the requirements of the advisory sentencing guidelines.

#### A.     The History and Characteristics of Alcides Umana

Mr. Umana has been convicted of a serious offense, yet it is important to consider the circumstances under which the offense took place and Mr. Umana's role in it. The guidelines are a benchmark for the Court in determining a sentence, however, it is 18 U.S.C. 3553 that dictates what the Court must consider in imposing sentence. For this Court to use the guidelines as a starting point, and then impose a sentence of 120 months, based on the factors under 18 U.S.C. 3553 would be consistent with the goals of the guidelines.

Mr. Umana's criminal history is minimal. His only prior arrest was for possession of marijuana. He was generally a person who worked, attended church services, and spent time

with his family. His involvement with the co-defendants in this case took him down a difficult road and ultimately caused him to be involved in an incident that has an enormous and tragic impact on his life.

Mr. Umana is just 22 years old. He comes from a poor family of rural agricultural workers in El Salvador, and emigrated to this country four years ago in order to seek stable employment and send money home to support his mother. He had been working since he was a small boy, having left school in the third grade to work in the fields. He has a common-law spouse with whom he has tried repeatedly to start a family. Their first daughter was born in El Salvador, but died tragically after only three months from a brain hemorrhage. Finally, his wife recently gave birth to another daughter, but only after Mr. Umana had been arrested in this case. Mr. Umana wants to be a provider to his family and a father to his wife, yet he understands that this will not be possible now for many years because of his participation in the robbery on July 29, 2009.

Furthermore, as discussed separately in the Sentencing Memorandum filed under seal, there are specific circumstances about Mr. Umana that this Court must consider when determining the appropriate sentence in the case, which are not considered by the mechanical approach of the sentencing guidelines. Given Mr. Umana's specific personal circumstances, as provided to the court within the PSR and by the Sealed Sentencing Memorandum, a sentence below the guidelines recommendation of 135-168 is appropriate for this case.

### B. The Nature of the Offense

Mr. Umana has been convicted of aiding and abetting a crime that resulted in a person's death. Certainly, he had no intention of causing that result, but he has appropriately accepted

responsibility for this unintended result.

The PSR reveals that Claros Luna and his associates engaged a young woman to work for them as a prostitute. The victim in this case, Mr. Luna, was a pimp. Mr. Luna transported this young woman from Maryland to Northern Virginia to engage in prostitution. Discovery reveals that during the week of this offense, Mr. Luna had this young woman service up to 30 men a day, charging them $30 per sex act, from which Mr. Luna took half as his fee for his services.

Mr. Umana's co-defendants, Portillo and Arguera, decided to seek "rent payments" from Mr. Luna for these activities. Arguera asked Mr. Umana to accompany them during one such attempted collection, and it was then that this tragic incident unfolded inside Mr. Luna's vehicle. Discovery further reveals that before the shooting erupted, Mr. Umana and the young woman, who were both in the back seat of the vehicle, sought to encourage Mr. Luna to remain calm and not to resist with violence. A struggle ensued between Mr. Luna and Mr. Portillo, during which Mr. Portillo was shot in the leg with the weapon he had initially pointed at Mr. Luna, and Mr. Luna was shot multiple times by co-defendants Portillo and Arguera. Mr. Umana, frightened, exited the vehicle and ran away once the shooting began.

### C. The Advisory Guidelines Range

Mr. Umana's position is that the appropriate range for this court to consider begins at 135-168 months of incarceration. This advisory range nevertheless fails to take into consideration the issues identified in the Sealed Sentencing Memorandum and fails fully to consider Mr. Umana's educational and family background, as revealed in the PSR, ¶¶ 43-60, as well as the personal characteristics noted in Section A of this position paper, *supra*.

### D. Specific Deterrence

The seriousness of this offense has been made extremely clear to Mr. Umana. He will pay a huge price for his involvement in this case. Because of his immigration status, whatever sentence the Court imposes, the conditions under which Mr. Umana will serve that sentence will be more restrictive than would be the case if Mr. Umana was an American citizen. Upon completion of the Court's sentence, Mr. Umana faces immediate removal to El Salvador.

### E. General Deterrence

Furthermore, a sentence of 120 months is a sufficient deterrent to the public. A term of many years of incarceration will speak loudly and clearly that participation in any criminal activity involving the threat of violence will have dire consequences for all involved.

### F. Unwarranted Sentencing Disparity

To the extent that such a sentence is disparate in any meaningful way, it is fully warranted given the circumstances of the case and of Mr. Umana himself.

## CONCLUSION

Accordingly, for the reasons listed above and those set forth in the Position on Sentencing, and in light of the factors outlined by Section 3553(a), including the nature and circumstances of the offense and the character of Mr. Umana, his decision to plead guilty and his acceptance of responsibility, he respectfully requests that this Court sentence him to a term of imprisonment of no more than 120 months confinement. Mr. Umana prays this Court find that he is unable to pay a fine and not impose any fine. Finally, Mr. Umana requests a designation to a facility as close as possible to this area to be able to be in proximity to his family, including his infant child.

Respectfully submitted,

ALCIDES UMANA

_____/s/_____
W. Todd Watson, Esquire
Virginia Bar No.38527
Joshua L. Paulson, Esquire
Virginia Bar No. (Pending)
Attorneys for Defendant
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, VA   22314
(703)600-0878 (telephone)
(703)600-0880 (facsimile)
Todd_Watson@fd.org
Joshua_Paulson@fd.org

_____/s/_____
Joseph J. McCarthy, Esquire
Virginia Bar No. 19006
510 King Street, Suite 400
Alexandria, VA   22314
(703) 549-9701
Mccarthy@lawdmc.com

**CERTIFICATE OF SERVICE**

  I hereby certify that on May 28, 2010, I will electronically file the foregoing with the Clerk of court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

    Morris R. Parker, Jr., Esquire
    Ronald L. Walutes, Jr., Esquire
    United States Attorney's Office
    2100 Jamieson Avenue
    Alexandria, VA   22314

  A copy of the foregoing pleading was also sent by interoffice mail to:

  Karen Moran
  U.S. Probation Officer
  401 Courthouse Square, Third Floor
  Alexandria, VA 22314

  Pursuant to the Electronic Case Filing Policies and Procedures, a courtesy copy of the forgoing pleading will be delivered to Chambers within one business day of the electronic filing.

      /s/
    W. Todd Watson, Esquire
    Virginia Bar No.38527
    Joshua L. Paulson, Esquire
    Virginia Bar No. (Pending)
    Attorneys for Defendant
    Office of the Federal Public Defender
    1650 King Street, Suite 500
    Alexandria, VA   22314
    (703)600-0878 (telephone)
    (703)600-0880 (facsimile)
    Todd_Watson@fd.org
    Joshua_Paulson@fd.org

      /s/
    Joseph J. McCarthy, Esquire
    Virginia Bar No. 19006
    510 King Street, Suite 400
    Alexandria, VA   22314
    (703) 549-9701
    Mccarthy@lawdmc.com